**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver of Union Savings Bank, Plaintiff,**

v.

**PELLETREAU & PELLETREAU, John B. Brown, Charles E. Falkner, Edward Krug, Edward McGovern, Dudley W. Norton, Louis A. Pfeifle, Peter V. Snyder, and Carroll M. Swezey, Defendants.**

No. CV 95–3461 (ADS).

United States District Court,
E.D. New York.

June 3, 1997.

Aron, Twomey, Hoppe & Gallanty by Alan T. Gallanty, New York City, for Plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker by Thomas Leghorn, Gerald A. Stein, New York City, for Defendants Pelletreau & Pelletreau and Peter V. Snyder.

De Feis, O'Connell & Rose by Nicholas Michael De Feis, New York City, for Defendants John B. Brown and Carroll M. Swezey.

Pinks, Brook & Arbeit by Steven G. Pinks, Hauppauge, NY, for Defendants Charles F. Falkner and Edward Krug.

Butera & Andrews by James Butera, J.C. Boggs, Washington, DC, for Defendants Edward McGovern, Alfred Volkmann, as executor of the estate of Dudley W. Norton, and John Hart, as executor of the estate of Louis A. Pfeifle.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

This action was commenced on August 25, 1995 by the plaintiff Federal Deposit Insurance Corp. ("FDIC") in its capacity as receiver of the Union Savings Bank ("Union"). The complaint alleges that the defendants, who were officers, trustees, committee members of Union, as well as Union's general and regulatory counsel, failed to properly manage the bank's joint venture real estate lending activity, and that as a result, the bank sustained over 60 million dollars in losses and was forced to close its doors. The defendant Pelletreau & Pelletreau ("Pelletreau"), which served as Union's general counsel, regulatory counsel and transaction counsel on the joint ventures at issue, moves the Court for an Order pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Seventeenth, Eighteenth and Nineteenth causes of action. In addition, the plaintiff moves to strike the Third, Fourth, Sixth, Seventh and Eighth affirmative defenses of defendants Edward McGovern, Dudley W. Norton, and Louis A. Pfeifle; the Second and Fifth affirmative defenses of defendants Charles E. Faulkner and Edward Krug; the Second, Fifth, Sixth, Seventh, Eighth and, to the extent applicable, the Ninth affirmative defenses of defendant Peter V. Snyder; the Second, Third, Fourth, Fifth, Sixth and, to the extent applicable, the Ninth affirmative defenses of defendants John B. Brown and Carroll M. Swezey; and the Third affirmative defense of defendant Pelletreau & Pelletreau, all pursuant to Fed. R.Civ.P. 12(f).

## I. BACKGROUND

Previously, the defendants Charles E. Falkner and Edward Krug, former officers of Union (the "officer defendants"), and the defendants John Brown, Edward McGovern, Dudley W. Norton, Louis A. Pfeifle and Carroll M. Swezey, former trustees of Union (the "trustee defendants"), moved the Court for an Order pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss portions of the complaint against them. The officer and trustee defendants also made a motion for a more definite statement of the claims against them pursuant to Fed.R. Civ.P. 12(e). By an Order dated February 24, 1996 (the "Order"), familiarity with which is assumed, the Court denied the defendants' motions to dismiss portions of the complaint pursuant to Rule 12(b)(6), but granted the defendants' motions for a more definite statement, pursuant to Rule 12(e):

> to the extent that the plaintiff is to [1] serve and file an amended complaint containing a more definite statement of the specific laws it claims were violated by the defendants, as well as [2] a more definite statement distinguishing which of the causes of actions and which of the wrongful acts refer to each defendant.

Order at 4. As a result, the plaintiff filed an amended complaint on March 20, 1996.

The amended complaint, brought by the FDIC in its capacity as Receiver of Union and in furtherance of its legislative mandate to maximize recovery of all damages sustained by failed banks, alleges against each individual defendant: negligence, breach of fiduciary duty and violation of applicable statutes and regulations against the former officers and trustees of Union. These claims arise out of the defendants' blanket alleged failure to properly execute, control and supervise Union's lending function. The amended complaint also alleges against Union's outside law firm, Pelletreau, attorney malpractice, breach of contract and breach of fiduciary duty for its failure to properly render legal advice and services to Union. Finally, the amended complaint alleges fraud, self-dealing, breach of fiduciary duty and violation of applicable statutes and regulations against Charles E. Falkner and T. John Folks for improperly extracting personal benefits from the Bank's participation in at least one of the joint ventures.

On June 17, 1996, the action was dismissed against defendant Ronald M. Bentley. On April 17, 1997, this action was discontinued *nunc pro tunc* as to defendant T. John Folks. A Suggestion of Death was filed on May 16, 1997 as to defendants Dudley W. Norton and Louis A. Pfeifle. During oral argument on this matter, the plaintiff's oral application to substitute Alfred Volkmann, as executor of the estate of Dudley W. Norton, and John Hart, as executor of the estate of Louis A. Pfeifle, for the deceased defendants was granted. In addition, J.C. Boggs of Butera & Andrews, attorneys for defendants Edward McGovern, Alfred Volkmann, as executor of the estate of Dudley W. Norton, and John Hart, as executor of the estate of Louis A. Pfeifle, was admitted *pro hac vice*.

## II. DISCUSSION

### A. *Defendant Pelletreau's motion to dismiss*

Defendant Pelletreau moves to dismiss the following three claims asserted against it: (1) negligence and professional malpractice (Seventeenth cause of action); (2) breach of contract (Eighteenth cause of action); (3) breach of fiduciary duty (Nineteenth cause of action).

### 1. *The Rule 12(b)(6) standard*

On a motion to dismiss for failure to state a claim, "the court should not dismiss the complaint pursuant to Rule 12(b)(6) unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'". *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)); *see also IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1052–53 (2d Cir. 1993), 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be tak-

en". *Samuels v. Air Transport Local 504,* 992 F.2d 12, 15 (2d Cir.1993); *see also Rent Stabilization Ass'n of the City of New York v. Dinkins,* 5 F.3d 591, 593–94 (2d Cir.1993) (citing *Samuels,* 992 F.2d at 15).

It is not the Court's function to weigh the evidence that might be presented at a trial, the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman,* 754 F.2d at 1067, and in doing so, it is well settled that the Court must accept the allegations of the complaint as true, *see LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs, Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90,; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief", Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice", Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (citing *Scheuer, supra,* 416 U.S. at 235–36, 94 S.Ct. at 1686). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citing *Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686).

It is within this framework that the Court addresses the present motion to dismiss.

## 2. *Statute of limitations*

■ The defendant Pelletreau moves to dismiss as time barred all claims that arose prior to three years before the FDIC was appointed as the receiver for Union on August 28, 1992. The Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA") provides a three year statute of limitations for claims such as this one brought by the FDIC in its capacity as receiver for Union. *See* 12 U.S.C. § 1821(d)(14). It is undisputed that this suit was commenced within three years of the FDIC's appointment as receiver. Federal banking regulation permits the FDIC to pursue any and all claims that Union may have had once it becomes receiver of the insolvent institution. *See* 12 U.S.C. § 1821(d); *RTC v. MacKenzie,* 60 F.3d 972, 977 (2d Cir.1995). However, Pelletreau contends that the state law claims acquired by the FDIC when it took over Union are time barred in that FIRREA does not revive any state claims for which the state limitations period had already expired. *See e.g., FDIC v. Cocke,* 7 F.3d 396, 400 (4th Cir.1993), *cert. denied,* 513 U.S. 807, 115 S.Ct. 53, 130 L.Ed.2d 12 (1994). The defendant maintains that New York's applicable statute of limitations provides that an action such as this one, for negligence and professional malpractice, breach of contract and breach of fiduciary duty, are subject to New York's three year statute of limitations. *See* N.Y. C.P.L.R. 214(6).

Prior to the September 4, 1996 amendment, N.Y. C.P.L.R. 214(6) provided in relevant part as follows:

> The following actions must be commenced within three years:
>
> \*  \*  \*  \*  \*  \*
>
> 6. an action to recover damages for malpractice, other than medical, dental or podiatric malpractice . . .

However, the New York Court of Appeals has consistently held that legal malpractice actions are subject to the six-year statute of limitations applicable to contract actions. *See e.g., Santulli v. Englert, Reilly & McHugh, P.C.,* 78 N.Y.2d 700, 579 N.Y.S.2d 324, 328–29, 586 N.E.2d 1014 (1992).

In response to what it considered incorrect judicial interpretation of C.P.L.R. 214(6), the New York legislature on September 4, 1996, passed a bill amending the statute as follows (the "1996 amendment"):

The following actions must be commenced within three years:

\* \* \* \* \* \*

6. an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort

. . . .

The last phrase clarifies that all actions for malpractice against non-medical professionals are to be governed by a three-year statute of limitations. The 1996 amendment provided that it "shall take effect immediately."

Defendant Pelletreau maintains that since the legislature originally intended the statute of limitations governing legal malpractice actions to be three years, the plaintiff's claims prior to August 28, 1989 are time barred. Plaintiff counters by contending that such application would be improper given the lack of legislative intent to apply the 1996 amendment retroactively. Defendant Pelletreau responds that the 1996 amendment was not a change requiring retroactive application since the statute of limitations has always been three years. The Court finds the defendant Pelletreau's argument unavailing.

The 1996 amendment was enacted after this action had been pending for more than one year. To apply the amendment to the present action necessitates retroactive application of the three-year statute of limitations. The New York Court of Appeals has not yet spoken on this issue and the lower courts have diverged on the same issue. See Russo v. Waller, 655 N.Y.S.2d 313, 314 (N.Y.Sup.Ct. 1997) (retroactive application); Garcia v. Director, N.Y.L.J. (N.Y.Sup.Ct. Jan. 17, 1997) (prospective application only). The cases decided by the appellate courts after the passage of the 1996 amendment of which the Court is aware, applied the six-year statute of limitations. However, the issue of retroactivity was not directly addressed in these cases. See Board of Managers of the Ocean Club at Long Beach Condominium v. Mandel, —— A.D.2d ——, 652 N.Y.S.2d 301 (2d Dep't 1997); Unadilla Silo Co., Inc. v. Ernst & Young, —— A.D.2d ——, 651 N.Y.S.2d 216 (3d Dep't 1996).

Four recent cases in the Southern District of New York have examined this issue and although different logic may have been applied, all four of the cases concluded that the three-year statute of limitations should only be applied prospectively. See Keller v. Lee, No. 96 CIV. 4168, 1997 WL 218435 (S.D.N.Y. April 30, 1997); Estate of Joseph Re v. Kornstein Veisz & Wexler, 958 F.Supp.907 (S.D.N.Y.1997); Mason Tenders District Council Pension Fund v. Messera, 958 F.Supp. 869 (S.D.N.Y. March 26, 1997); Durkin v. Shea, 957 F.Supp. 1360 (S.D.N.Y. 1997). Even among the federal district courts, there is disagreement on whether the legislative history mandates retroactive application of the 1996 amendment. The courts in Keller, supra, and Durkin, supra, held that the legislative history of the 1996 amendment did not include an express statement of retroactivity. On the contrary, in Estate of Joseph Re, supra, Judge Sotomayer found that the legislature had sufficiently indicated an intent that the 1996 amendment be applied retroactively. However, Judge Sotomayer held that the amendment should not be applied retroactively for the following three reasons: (1) the 1996 New York legislature was not in a "better position than the state's courts to assess what the state's legislature intended, decades ago, when it originally enacted C.P.L.R. 214(6)", Estate of Joseph Re, 958 F.Supp. 907, 917–18; (2) principles underlying separation of powers suggested that it was inappropriate for the legislature to take such an interpretive role; and (3) the amendment could not be applied retroactively because "it would extinguish a claim that plaintiffs had already filed within the limitations period then applicable", id. 958 F.Supp. at 918.

In this Court's view, the 1996 amendment should not be applied retroactively. The legislative history does not include an express statement of retroactivity. See Durkin, 957 F.Supp. at 1372–75. The plaintiff's rights had vested by the time its complaint was filed under the six-year statute of limitations. The Court will not abrogate the plaintiff's rights absent a clear intent by the legislature to retroactively apply the three-year statute

of limitations. Therefore, the six-year statute of limitations applies with regard to the plaintiff's claims against defendant Pelletreau arising from the defendant's alleged legal malpractice. Hence, any claims arising before August 28, 1986 are time barred unless the statute of limitations was tolled.

With respect to the joint ventures Union entered into, the complaint alleges that defendant Pelletreau served as counsel to Union, preparing relevant agreements and documentation, undertaking further specific duties in connection therewith, and advising Union on applicable regulatory matters. The complaint further alleges that with full knowledge of Union's lending policies and regulatory requirements, defendant Pelletreau failed to adhere to them and otherwise failed to properly fulfill its professional obligations to assure that Union's position was adequately protected. Defendant Pelletreau contends that each of the claims in this case accrued when each of the loans were initially approved. Four of the joint ventures about which the FDIC complains were entered into by Union after August 28, 1986, and clearly fall within the limitations period. Therefore, it would follow from defendant Pelletreau's argument that claims relating to the three other ventures, namely, Bay Pointe Associates, Hampton Vistas Associates and St. Marks Associates, are time barred because the initial agreements relating to these projects were executed in December 1984, May 1985 and April 1986, respectively. The FDIC advances the following theories to support the viability of the claims: (1) the defendant Pelletreau's wrongful conduct was of a continuing nature that began prior to August 1986, but extended into the 1990's; (2) the statute of limitations was tolled under the continuous representation doctrine until defendant Pelletreau ceased representing Union when Union closed in 1992; and (3) the doctrines of adverse domination and/or equitable estoppel, in addition to New York Gen. Oblig. § 17–103, apply to toll the statute of limitations. Defendant Pelletreau contends that all of these theories are inapplicable to save the plaintiff's claims.

The Court is unaware of any New York court applying the "continuing wrong" doctrine to claims arising from legal malpractice. However, the Court notes the application of the continuous representation doctrine to such claims.

### 3. *Continuous representation doctrine*

Generally, an action for malpractice accrues on the date on which the alleged malpractice occurred. *See Glamm v. Allen,* 57 N.Y.2d 87, 93, 453 N.Y.S.2d 674, 677, 439 N.E.2d 390, 393 (1982). However, New York applies the continuous representation doctrine which relieves plaintiff of his obligation to commence an action against the attorney until the attorney has ceased to represent the plaintiff in the case in which the malpractice has occurred. *See id.* at 93, 453 N.Y.S.2d at 678, 439 N.E.2d at 393. "[T]he rule recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." *Greene v. Greene,* 56 N.Y.2d 86, 94, 451 N.Y.S.2d 46, 50, 436 N.E.2d 496, 500 (1982). In addition, a client's interests will only be hindered further if he is forced to sue his attorney for malpractice while the attorney is still representing him. *See Glamm,* 57 N.Y.2d at 93, 453 N.Y.S.2d at 677, 439 N.E.2d at 393.

In order to invoke the doctrine of continuous representation, "the plaintiff must affirmatively allege an ongoing representation in connection with the specific matter from which the malpractice arose." *See Mason Tenders District Council Pension Fund,* supra, 958 F.Supp. 869, 1997 WL 139524, at *20 (citing *Zaref v. Berk & Michaels,* 192 A.D.2d 346, 595 N.Y.S.2d 772 (1st Dep't 1993)). Further, the allegations must be made with "clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney." *See id.* (quoting *Luk Lamellen U. Kupplungbau v. Lerner,* 166 A.D.2d 505, 506, 560 N.Y.S.2d 787, 789 (2d Dep't 1990)).

The Court finds that the plaintiff has alleged continuous representation of Union by the defendant Pelletreau with regard to the three joint ventures at issue. The defen-

dant Pelletreau continuously represented Union in each of the three joint ventures at issue. As to the Bay Pointe Associates, Hampton Vistas Associates and St. Marks Associates joint ventures, the plaintiff's complaint alleges that had defendant Pelletreau properly fulfilled its duties and obligations to Union, the joint ventures would not have been so implemented and Union would not have suffered such loss. Further, the plaintiff's complaint alleges that funding activity continued after August, 1986, and that Union eventually exceeded permissible lending limits in each of the three projects. The plaintiff alleges that the defendant Pelletreau, as transaction counsel throughout the relevant time period, failed to advise that these loans exceeded the legal lending limit. In addition, the plaintiff alleges that defendant Pelletreau failed to properly advise on compliance with regulatory warnings and criticisms issued throughout the relevant period. Based on these allegations, the Court cannot say that the plaintiff could prove no set of facts in support of its claim that wrongful conduct occurred after August, 1986. Therefore, under the standard guiding review of Rule 12(b)(6) motions, the FDIC should have the opportunity to introduce evidence in support of its claims.

### 4. *Adverse domination, equitable estoppel and N.Y. Gen. Oblig. § 17–103*

The FDIC also contends that the theories of adverse domination and equitable estoppel, as well as N.Y. Gen. Oblig. § 17–103, operate to toll the statute of limitations. This Court examined these same issues as it applied to the officer defendants and the trustee defendants. *See* Order dated February 24, 1996 at 13–16. In that Order, the Court noted the disagreement in the case law as to the applicability of the adverse domination tolling theory in New York, but noted the availability of the doctrine of equitable estoppel and N.Y. Gen. Oblig. § 17–103 to the plaintiff. The Court reserved opinion as to whether these principles would apply stating, "[w]hether the FDIC can satisfy its burden to establish that the defendants controlled Union to the extent necessary to justify application of tolling principles involves questions of fact, the resolution of which

must await a later date." Order dated February 24, 1996 at 16.

The plaintiff alleges that defendant Pelletreau was part of the defendant group which dominated the affairs of Union. It is further alleged that a partner of defendant Pelletreau served as chairman of the board of trustees of Union throughout much of the relevant period (and then served as trustee emeritus), and also served as member and as chairman of the Mortgage and Real Estate Committee (the "MRC"), the bank committee specifically charged with responsibility for these joint ventures. Another partner of defendant Pelletreau participated and acted as counsel to the MRC. Throughout the relevant period, defendant Pelletreau is further charged as general, regulatory, and transaction counsel to Union. It is also charged with participating in the Trustee and MRC actions which underlay the FDIC's claims against all defendants, and as to which all defendants together exercised dominion and control over Union's affairs. Furthermore, the plaintiff alleges that defendant Pelletreau was a fiduciary to the Bank until its closing, as were defendant Pelletreau's individual partners.

The Court finds that if the plaintiff's allegations are true, the statute of limitations may be tolled. Consistent with the Order dated February 24, 1996 at 16, the Court finds that the "application of [the] tolling principles involves questions of fact, the resolution of which must await a later date."

### 5. *Conclusion as to statute of limitations*

"While a statute-of-limitations defense may be raised in a motion to dismiss under Fed. R.Civ.P. 12(b)(6), such motion should not be granted unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Ortiz v. Cornetta,* 867 F.2d 146 (2d Cir.1989) (quoting *Abdul–Alim Amin v. Universal Life Ins. Co.,* 706 F.2d 638 (5th Cir.1983)). Considering the plaintiff's allegations that the defendant Pelletreau in its capacity as general counsel, regulatory counsel and transaction counsel: (1) continuously represented Union relating to the Bay

Pointe, Hampton Vistas and St. Mark's projects after August 28, 1986; and (2) were allegedly negligent, reckless and breached their fiduciary duty with regard to monitoring and administering the lending activities on a continuing basis through August, 1992; as well as the possibility that certain tolling doctrines *may* be applicable, the Court declines at this time to dismiss the FDIC's causes of action relating to ventures entered into prior to August, 1986. It is not apparent from the face of this complaint that the plaintiff's claims relating to the three pre-August, 1986 projects are time barred as a matter of law. However, denial of the defendant Pelletreau's motion to dismiss based on the statute of limitations argument does not mean that issues relating to the limitations period are resolved. When the factual record in this case is fully developed via discovery, the defendants may have reason to reassert their arguments in a summary judgment motion.

## B. *Plaintiff's motion to strike*

In their answers, each of the defendants, in varying degrees, asserts the following affirmative defenses challenged in the plaintiff's motion to strike:

1. the doctrines of preemption and supersession;

2. plaintiff's alleged comparative and contributory negligence;

3. plaintiff's alleged failure to mitigate; and

4. plaintiff's alleged laches and equitable estoppel.

The Court notes that defendant Pelletreau has not filed an answer to the plaintiff's amended complaint. The plaintiff seeks to strike defendant Pelletreau's affirmative defense of the plaintiff's failure to mitigate, which was asserted in its original answer. In addition, because this action as to defendants Dudley W. Norton and Louis A. Pfeifle was stayed until the substitution of the executors of their respective estates, the plaintiff will be granted thirty days from the date of this Order to renew its motion to strike the affirmative defenses of these two defendants.

### 1. *The Rule 12(f) standard*

Fed.R.Civ.P. 12(f) provides:

Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

■ Motions to strike are generally disfavored and will be denied unless it is clear that under no circumstances could the defenses succeed. *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.,* 744 F.2d 935, 939 (2d Cir.1984), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). A motion to strike an affirmative defense should be denied where the defense is sufficient as a matter of law or fairly presents a question of law or fact that the court should hear at trial. *Resources Funding Corp. v. Congrecare, Inc.,* No. 91 CIV. 8163, 1994 WL 24825, at *3 (S.D.N.Y. Jan.21, 1994).

■ Three prerequisites must be satisfied before a court may grant a motion to strike defenses. First, a motion to strike defenses "will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense'." *Salcer,* 744 F.2d at 939 (quoting *Durham Industries v. North River Insurance Co.,* 482 F.Supp. 910, 913 (S.D.N.Y.1979)). To this end, a defendant's pleading must be construed liberally. *Bennett v. Spoor Behrins Campbell & Young, Inc.,* 124 F.R.D. 562, 564 (S.D.N.Y.1989). Second, there may be no substantial question of law, a resolution of which could allow the defense to succeed. *Salcer,* 744 F.2d at 939. Third, the plaintiff must show that it is prejudiced by the inclusion of the defense. Increased time and expense of trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike. *See FDIC v. Eckert Seamans Cherin & Mellott,* 754 F.Supp. 22, 23 (E.D.N.Y.1990).

■ On a final note, Rule 12(f) authorizes the district court to act "upon the court's initiative at any time." This grant of judicial discretion "has been interpreted to allow the court to consider untimely motions to strike and to grant them if doing so seems proper. . . . In light of this, the time limitations in Rule 12(f) should not be applied strictly when the motion seems to have merit." 5A Wright & Miller, Federal Practice and Procedure 2d, § 1380 (1990).

It is within this framework that the Court reviews the plaintiff's motion to strike the defendants' affirmative defenses.

### 2. *Preemption and supersession*

■ An affirmative defense which previously has been rejected on a defendant's motion to dismiss is thereupon insufficient as a matter of law and must be stricken. *See Hoppe v. G.D. Searle & Co.*, 779 F.Supp. 1413, 1423 (S.D.N.Y.1991). In their answer, defendant McGovern asserts the doctrines of preemption and supersession as affirmative defenses. These same legal theories were advanced and rejected by the Court on defendants' prior motion to dismiss all the state and federal claims other than those based on gross negligence, as preempted or superseded by federal law, by an Order dated February 24, 1996. Therefore, the plaintiff's motion to strike the affirmative defense of preemption and supersession is granted except as to defendants Alfred Volkmann, as executor of the estate of Dudley W. Norton, and John Hart, as executor of the estate of Louis A. Pfeifle.

### 3. *The other affirmative defenses*

■ The defendants also assert as affirmative defenses the plaintiff's alleged comparative and contributory negligence, failure to mitigate, laches and equitable estoppel. The plaintiff contends that these defenses are barred by the federal "no duty" doctrine, under which the FDIC owes no duty to the directors and officers of the bank. The plaintiff maintains that duty is owed only to the insurance fund and to the banking public.

Defendants counter by arguing that after the Supreme Court case of *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994), federal common law is no longer applicable, and therefore the federal "no duty" rule no longer applies. Defendants maintain that state law applies and that both defenses are appropriate since under New York law, a receiver has the duty to mitigate damages.

The plaintiff responds by contending that *O'Melveny & Myers* did not effectively abrogate *U.S. v. Gaubert*, 499 U.S. 315, 324, 111 S.Ct. 1267, 1274, 113 L.Ed.2d 335 (1991), which held that the discretionary acts of government agents are protected and not subject to judicial review.

The legal issue of whether the "no duty" rule survives *O'Melveny & Myers* is complex and disputed. The Second Circuit has yet to address this issue. Subsequent to *O'Melveny & Myers*, two district courts in New York have refused to strike affirmative defenses when presented with this same issue. *See FDIC v. Abel*, No. 92 CIV. 9175, 1996 WL 520906 (S.D.N.Y. Sept.12, 1996); *RTC v. Gregor*, No. 94 CV 2578, slip op. (E.D.N.Y. Sept. 9, 1995). The Court has reviewed and considered the parties' in depth discussion on this matter and finds that the issues presented are precisely the substantial issues of law that the Second Circuit has cautioned are properly determinable "only after discovery and a hearing on the merits." *See Salcer*, 744 F.2d at 939. Therefore, the Court denies the plaintiff's motion to strike defendants' affirmative defenses of comparative and contributory negligence, failure to mitigate, laches and equitable estoppel.

### III. CONCLUSION

Having reviewed the parties' submissions, and heard oral argument, and for the reasons set forth above; it is hereby

**ORDERED,** that the defendant Pelletreau & Pelletreau's motion to dismiss the Seventeenth, Eighteenth and Nineteenth causes of action of the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6), is denied; it is further

**ORDERED,** that the plaintiff FDIC's motion to strike defendant Edward McGovern's Third and Fourth affirmative defenses of preemption and supersession, respectively,

pursuant to Fed.R.Civ.P. 12(f), is granted; it is further

**ORDERED,** that the plaintiff FDIC's motion to strike defendant Edward McGovern's Sixth, Seventh and Eighth affirmative defenses; defendants Charles E. Faulkner and Edward Krug's Second and Fifth affirmative defenses; defendant Peter V. Snyder's Second, Fifth, Sixth, Seventh, Eighth and, to the extent applicable, the Ninth affirmative defenses; defendants John B. Brown and Carroll M. Swezey's Second, Third, Fourth, Fifth, Sixth and, to the extent applicable, the Ninth affirmative defenses; and defendant Pelletreau & Pelletreau's Third affirmative defense, all pursuant to Fed.R.Civ.P. 12(f), is denied; it is further

**ORDERED,** that the plaintiff is granted thirty days from the date of this Order to renew their motion to strike the affirmative defenses of Alfred Volkmann, as executor for the estate of Dudley W. Norton, and John Hart, as executor for the estate of Louis A. Pfeifle, and it is further

**ORDERED,** that the caption is amended as follows to reflect the substitution of Alfred Volkmann and John Hart as executors of the estates of defendants Dudley W. Norton and Louis A. Pfeifle, respectively:

**SO ORDERED.**